IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLIE FRANKLIN ROBERTS,<br><br>      Petitioner,<br><br>v.<br><br>SCOTT CROW,<br>*Director, Oklahoma Department of Corrections,*<br><br>      Respondent. | Case No. 18-CV-306-JFH-KEW |

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Petitioner Charlie Franklin Roberts ("Roberts") is a prisoner proceeding *pro se*. He is currently in the custody of the Oklahoma Department of Corrections ("ODOC") and confined in the Lawton Correctional Facility in Lawton, Oklahoma. He challenges his convictions and sentences in Carter County District Court (Case No. CF-2015-39), for Kidnapping (Count 2) and Domestic Assault and Battery with a Dangerous Weapon (Count 4), and misdemeanor violation of a protective order. Roberts pleaded guilty to the offenses. The trial court sentenced him to thirty (30) years imprisonment on each count, to run concurrently, and consecutively to prior sentences. For the reasons set forth below, Roberts' Petition for Writ of Habeas Corpus [Dkt. No. 1] is DENIED.

## PROCEDURAL HISTORY

On November 4, 2015, the trial court held a hearing on Roberts' waiver of his right to a jury trial.

    Court:      My understanding is Mr. Roberts is willing and wanting to waive his right to a jury trial in the felony and the misdemeanor?

    Counsel:   Yes, Your Honor.

| | |
|---|---|
| Court: | All right. Mr. Roberts, do you understand that you do have a right to have a jury trial in this matter, and you've talked to your lawyer, Ms. Blackburn. And after discussing with this [sic], you've decided that you're wanting to waive your right to a jury trial; is that correct? |
| Roberts: | Yes, sir. |
| Court: | All right. And Mr. Roberts, Ms. Blackburn's also talked to you about it, and based on your right to – or your willingness to waive your right to a jury trial, it's my understanding that the State has made an offer here recently that Ms. Blackburn has conveyed to you that would entail a blind plea. And you've been talking to her about that; is that correct? |
| Roberts: | Yes, sir. |
| . . . | |
| State: | Judge, I would just—I want Mr. Roberts to be clear that you can't reinsert your right to a jury trial. |
| Roberts: | Yes, sir. |
| State: | Today is – if you want to waive, it's gone. |
| Roberts: | I understand. |
| Counsel: | And I have fully explained that to him and that he has every right to make that request, that it's a constitutional right to have 12 persons hear this case. And we've had a fairly lengthy discussion regarding that specific issue this afternoon, Your Honor. And I have no reason to believe that Mr. Roberts is not competent to enter this waiver and that he doesn't fully understand the ramifications of that waiver. |
| Court: | Okay. And let me just ask a couple of those questions just so we're clear, Mr. Roberts. But are you on a medication or substance that would affect your ability to understand what you're doing? |
| Roberts: | No, sir. |
| Court: | Should you be on some medicines so you'd know what we're doing? |
| Roberts: | No, sir. |
| Court: | And you feel you're clear-headed, alert, and understand what you're doing? |
| Roberts: | Yes, sir. |
| Court: | And after going over all your Constitutional rights regarding this felony and misdemeanor trial, you are fully aware of all those facts and understand that |

|  |  |
|---|---|
|  | you're waiving your right to a jury trial and that's permanent. You're not gonna get a jury trial in this felony or this misdemeanor; do you understand that? |
| Roberts: | Yes, sir. |
| Court: | All right. Mr. Roberts, based on that, I'm gonna accept your waiver of your right to a jury trial. |

Dkt. No. 7-9 at 2-5.

On November 5, 2015, (the next day), on the advice of appointed counsel, Roberts entered pleas of guilty to Counts 2 (Kidnapping) and 4 (Domestic Assault and Battery with a Dangerous Weapon) of the amended information. Dkt. No. 8-1 at 56. In exchange, the State of Oklahoma dismissed Count 1 (Burglary) and Count 3 (Rape by Instrumentation). Dkt. No. 7-8 at 1. With assistance from his attorney, Roberts completed and signed, under penalty of perjury, a "Plea of Guilty/Summary of Facts" document, in which Roberts averred that he understood the nature and consequences of the plea proceeding, and that he was pleading guilty to Kidnapping and Domestic Assault and Battery with a Dangerous Weapon. In exchange the State of Oklahoma would dismiss the Burglary and Rape by Instrumentation charges in the information. Roberts indicated that he understood the punishment for Kidnapping was a minimum of 20 years imprisonment and a maximum of life imprisonment. He indicated that he understood the punishment for Domestic Assault and Battery with a Dangerous Weapon was a minimum of 4 years imprisonment and a maximum of life imprisonment. He indicated that he understood his constitutional rights and understood that he waived those rights by entering the guilty plea. Roberts averred he discussed the charges with his lawyer and sought his lawyer's advice regarding pleading guilty. Roberts declared that he believed his lawyer had "effectively assisted" him in the case, and Roberts was satisfied with his lawyer's advice. Roberts affirmed that he had not been "forced, abused, mistreated, threatened, or promised anything by anyone" in exchange for his plea, and further that

he pleaded guilty of his "own free will and without any coercion or compulsion of any kind." Dkt. No. 7-1 at 2-6.

The trial court held a separate plea hearing. The Court confirmed that Roberts understood the minimum and maximum punishments for the offenses to which he was pleading guilty, and the terms of potential post-imprisonment supervision.

> Court:  I know Ms. Blackburn went over your Constitutional rights with you, Mr. Roberts, but you have a right to a speedy jury trial before your peers. You have a right to have your attorney present; to be presumed innocent of the charges; to remain silent; not testify against yourself; to hear all the witnesses against you; cross-examine them at trial; to present witnesses, evidence, and defenses on your own behalf; to have the State prove your guilt beyond a reasonable doubt; and at a jury trial, have the verdict of guilty or not guilty be unanimous or request a judge trial. Do you understand these rights?
>
> Roberts: Yes, sir.
>
> Court: Do you understand that if you plead guilty today, you're waiving those rights?
>
> Roberts: Yes, sir.
>
> Court: Now I know Ms. Blackburn has discussed this with you and she's assisted you effectively, and what you're wanting to do on two of those counts in the misdemeanor is change your plea of not guilty to guilty; is that correct?
>
> Roberts: Yes, sir.
>
> Court: All right. And, Mr. Roberts, you understand this is a blind plea, there's not a negotiated plea agreement, other than they're going to dismiss those counts if you plead guilty; do you understand?
>
> Roberts: Yes, sir.
>
> Court: And do you understand that as far as the range of punishment we discussed on those charges, I'm to sentence you within that range of punishment. If you don't, you may file the appropriate paperwork to withdraw your plea of guilty. Do you understand?
>
> Roberts: Yes, sir.
>
> Court: All right. And what you have to do is once I – you have ten days to do that. Sentencing is going to be set off for another day though. And once I sentence you, you'll have ten days to withdraw your plea of guilty. If you don't do it

> within that ten days, it's a drop-dead, hard deadline; you don't get to do it; you understand?
>
> Roberts: Yes, sir.
>
> Court: All right. Mr. Roberts, to Count 2 in the felony, kidnapping; Count 4 in the felony, domestic assault and battery with a dangerous weapon; and protective order violation in the misdemeanor; do you plead guilty or not guilty?
>
> Roberts: Guilty, Your Honor.
>
> Court: All right. And, Mr. Roberts, in the Informations, under the kidnapping, the State had alleged that on the 14th of January of this year that Ms. Ficklin was forcibly seized and confined, without lawful authority, against her will, on or about the 14th of January.
>
> On that same day, they allege domestic assault and battery with a dangerous weapon; that she was hit above her right eye with a wooden handle of a knife with force and violence without excuse in order to inflict either hurt or bodily injury.
>
> And then in the misdemeanor, on that same day, you'd been ordered under a protective order not to be there. If you were there, and so it's a violation.
>
> Do you understand and agree that's what occurred on those days?
>
> Roberts: Yes, sir.
>
> . . .
>
> Court: All right. Sir, have you been forced, abused, mistreated, or promised anything in order to enter your plea today?
>
> Roberts: No, sir.
>
> Court: Do you do this of your own free will without coercion or compulsion of any kind?
>
> Roberts: Yes, sir.

Dkt. No. 7-9 at 8-11.

A sentencing hearing was held on December 9, 2015. On the same day, Roberts' appointed counsel filed a Motion to Withdraw Plea. Dkt. No. 7-4. After a hearing held on January 5, 2016, the trial court denied Roberts' Motion to Withdraw Plea. Dkt. No. 8-1 at 103.

With the assistance of counsel, Roberts sought certiorari in the Oklahoma Court of Criminal Appeals ("OCCA") for review of the trial court's denial of his motion to withdraw his plea. Roberts argued (1) that his trial counsel had an actual conflict of interest, which constituted ineffective assistance of counsel, (2) he was misadvised as to the consequences of guilty pleas, and (3) there was an insufficient factual basis for his pleas. *Roberts v. State of Oklahoma*, Case No. C-2016-38 (Okla. Crim. App. filed May 26, 2016).[1] In its response, the State of Oklahoma conceded that Roberts received ineffective assistance of counsel in the motion to withdraw plea hearing due to an actual conflict of interest between Roberts and his trial attorney. The State urged that Petitioner should have been appointed conflict counsel and given an opportunity to provide the trial court with "a proper and adequate" motion to withdraw his plea. *Id.* (filed October 27, 2016).

On November 7, 2016, the OCCA granted certiorari and remanded the case for a new hearing on the motion to withdraw the plea. The OCCA found that the trial court record clearly demonstrated that "Petitioner was not represented by conflict-free counsel on his motion to withdraw the plea." Specifically, "Petitioner's perspectives regarding the plea discussions with his attorney were completely divergent from the perspective of his attorney," which resulted in trial counsel protecting her own interests rather than those of Roberts in seeking to withdraw his plea. The OCCA directed the trial court to appoint new, conflict-free counsel and grant leave to Roberts, with the assistance of new counsel, to refile a motion to withdraw his plea. The OCCA further directed the trial court to conduct an evidentiary hearing on the motion. Dkt. No. 8-1 at 136-39.

---

[1] The Court takes judicial notice of the public records of the Oklahoma State Courts Network at http://www.oscn.net. *See Pace v. Addison*, No. Civ-14-0750-HE, 2014 WL 5780744, at *1 n.1 (W.D. Okla. Nov. 5, 2014).

On November 18, 2016, Roberts' newly appointed counsel filed a second motion to withdraw the plea, as directed by the OCCA. Dkt. 7-5. The trial court held a hearing on the second motion to withdraw on December 19, 2016. Roberts testified at the hearing regarding his plea counsel's actions and errors, from his point of view, in representing him during the plea negotiations. Roberts was examined by his attorney, the State, and the trial judge. After hearing testimony and reviewing the record, the trial judge denied the motion to withdraw, stating:

> After reading some case law and reviewing the transcripts in this matter, specifically – all of them, but specifically also the plea back in November of last year, the Court finds as follows: Ms. Blackburn was able to get one felony case dismissed at the Preliminary Hearing.
>
> At plea negotiations, she was able to get the burglary and the rape by instrumentation charge dismissed – dismissed as part of the plea agreement to kidnapping and domestic burglary, even though they were going to be blind. And they were blind because the Court had informed Mr. Roberts that those pleas – after jury trial started is when the request – this was within a few days of the jury trial – it was either jury trial or blind plea.
>
> Mr. Roberts and Ms. Blackburn may not have gotten along, but she did inform him of all his options. The plea, jury trial, nonjury trial, and likely consequences of each option. I understand that in the communications that it wasn't nice or polite and maybe even in good language that you might want to say in front of your grandmother, but it was conveyed.
>
> After reviewing the transcript, specifically again, the blind plea agreement, the Court finds that his plea to have been made advisedly, not through ignorance, not inadvertently, not through force, abuse, or any threats, with deliberation, in fact, over several meetings over several days.
>
> Defendant's motion to withdraw his plea is denied.

Dkt. No. 8-7 at 42-43.

With assistance of counsel, Roberts appealed the trial court's denial of his second motion to withdraw the plea. Roberts raised four (4) issues on appeal:

> I.  The trial court abused its discretion in denying Petitioner's motion to withdraw his plea because it was not knowingly, intelligently, and voluntarily entered.

II. There was not a sufficient factual basis for the pleas.

III. Petitioner was denied his right to the effective assistance of counsel in violation of the 6th and 14th Amendments to the United States Constitution.

IV. Cumulative error deprived Petitioner of a fair proceeding.

Dkt. No. 7-8 at 2-3. The OCCA denied Roberts' appeal, finding no merit to any of his arguments. Dkt. No. 7-8.

On September 10, 2018, Roberts filed a *pro se* Petition for Writ of Habeas Corpus in this Court. Dkt. No. 1. He raised three grounds for relief:

I. His guilty plea was not knowing and voluntary;

II. There was an insufficient factual basis for his pleas of guilty;

III. He received ineffective assistance of counsel in that he was advised to enter into an unknowing and involuntary plea; and his counsel failed to raise relevant issues in the motion to withdraw the pleas.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution. A petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). A state court's judgment is "contrary to" federal law where "the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)). An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case. *Id.*

### DISCUSSION AND ANALYSIS

I. **Ground I: The OCCA's determination that Roberts' guilty pleas were entered into knowingly and voluntarily was not contrary to or an unreasonable application of federal law.**

In Ground I of his Petition for Writ of Habeas Corpus, Roberts states that his guilty plea was not knowing and voluntary because there was an unreasonable determination of the facts in light of the evidence presented. Dkt. No. 1 at 5.

The OCCA determined:

> The record in this case reflects a knowing and voluntary plea. Both the completed, signed Summary of Facts form and the transcript of the plea hearing show that Petitioner was fully informed and indicated his understanding of his rights and those he would be waiving by pleading guilty, the statutory range of punishment and the material consequences flowing from the plea. Petitioner indicated he had conferred with counsel and that he was satisfied with counsel's assistance. Further, he indicated that he had not been forced, abused, coerced, mistreated or promised anything in order to enter the guilty pleas and that he was doing so of his own free will.
>
> Petitioner's claim that his pleas were not voluntary because he was misadvised as to the appropriate legal procedures to follow in seeking to withdraw the pleas is specious. Petitioner, with the assistance of counsel, timely filed a motion to withdraw plea which in turn was heard by the court. Petitioner has not shown how any confusion over how to withdraw the plea contributed to the pleas not being entered voluntarily.
>
> As Petitioner has not met his burden of showing that the pleas were entered unadvisedly, through ignorance, inadvertence, influence or without deliberation, and that there is a defense to present to the jury, we find the trial court did not abuse its discretion in denying the motion to withdraw.

Dkt. No. 7-8 at 4-5.

As an initial matter, the Court notes that the question whether Roberts' plea was knowing and voluntary received a great deal of analysis in the state courts. The trial court held separate hearings on Roberts' waiver of his right to trial and on the plea itself. The trial court denied Roberts' first motion to withdraw the plea. On appeal of that decision, the OCCA determined that Roberts' plea counsel had a conflict of interest and remanded the case for appointment of conflict-free counsel. The trial court held a second hearing, in which Roberts was represented by separate counsel. Based upon evidence adduced at that hearing, in addition to the review of the plea proceedings, and the plea of guilty documents, the trial court denied Roberts' second motion to withdraw the plea. On appeal of that denial, the OCCA affirmed the trial court's determination because the record demonstrated that Roberts understood the nature of his plea and its consequences, was not coerced or threatened to enter his plea, and received benefit (the dropping of two felony charges) from the plea negotiations conducted by his initial plea counsel.

A federal court reviews habeas challenges to guilty pleas for violations of due process. Under habeas review, a plea of guilty must comport with due process because basic constitutional rights are waived, including the privilege against self-incrimination; the right to a trial by jury; and the right to confront one's accusers. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Accordingly, a plea of guilty and its attendant waiver of rights must be entered into knowingly and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748-49. A federal court will uphold a guilty plea made in state court "if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty." *Miles v. Dorsey*, 61 F.3d 1459, 1466 (10th Cir. 1995) (citing *Boykin*, 395 U.S. at 242-44). The waiver of constitutional rights must be an "intelligent act[] done with sufficient awareness of

the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 749. A knowing plea is "the product of a deliberate, intelligent choice." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (citing *Parke v. Raley*, 506 U.S. 20, 28 (1992)). A criminal defendant must also fully understand "what the plea connotes and . . . its consequences." *Cunningham*, 92 F.3d at 1060 (quoting *Boykin*, 395 U.S. at 244).

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. 742, 755 (citations omitted).

The OCCA's analysis directly addressed each of these constitutional concerns and rejected any argument that Roberts received threats, misrepresentations, or improper promises. Roberts described the situation with his initial counsel as having given him two unacceptable choices: 1) a trial, which would result in the maximum penalties for all four felony offenses, or 2) a plea of guilty, to which he would receive lesser sentences but would give up his right to a jury trial, without time for meaningful deliberation. In questioning Roberts about his relationship with his attorney, the trial court found that despite a contentious relationship, Roberts' attorney adequately described to Roberts the charges against him, his options for pleading guilty or going to trial, the minimum and maximum sentences, and the constitutional consequences of entering a plea of guilty. Moreover, Roberts' own statements at both hearings demonstrate he understood the charges against him, the potential penalties, and the rights he was giving up by pleading guilty. On appellate review, the OCCA found no error and determined that the trial court's findings were not an abuse of discretion.

A trial counsel's inaccurate predictions of the sentence a defendant might receive do not render a guilty plea invalid. *Bush v. Neet*, 400 F.3d 849, 852 (10th Cir. 2005). "An erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation based on his attorney's erroneous estimate, likewise does not render a plea involuntary." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (quoting *Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)). Nor does defense counsel's advice, or even "strong urging," invalidate a guilty plea. *Fields*, 277 F.3d at 1214 (quoting *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991)). See also *Miles*, 61 F.3d at 1470 (attorney's attempt to persuade defendant that it is in his best interest to plead guilty does not render plea involuntary.) Moreover, A habeas petitioner's own sworn statements that his plea was knowing and voluntary "constitute a formidable barrier in any subsequent collateral proceedings." *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). See also *Bush v. Neet*, 400 F.3d 849, 852 (10th Cir. 2005) (quoting *Blackledge*, 431 U.S. at 74) ("Solemn declarations in open court carry a strong presumption of verity.").

Roberts' own statements at the plea hearing that he understood the consequences of his plea and that he entered into the plea agreement voluntarily undermine his later statements of coercion by his attorney. Roberts' sworn statements at the plea hearing are a "formidable barrier" to habeas relief. *Romero*, 46 F.3d at 1033.

Roberts' assertions do not demonstrate actionable constitutional violations. An attorney's inaccurate prediction of a trial judge's sentence does not render void an otherwise constitutional guilty plea, nor does an attorney's strong urging, which falls short of coercion, to accept a plea. The determinations made by the OCCA fall into these categories, none of which support a finding that Roberts' plea was not knowing and voluntary. Therefore, on the basis of Roberts' own

statements at the plea hearing, and the lack of evidence of coercion or threat, this Court cannot find that the OCCA's decision was contrary to or an unreasonable application of federal law. Accordingly, Ground I of Roberts' habeas petition is DENIED.

## II. Ground II: Roberts' claim that there was an insufficient factual basis for his plea of guilty is not cognizable on habeas review.

In Ground II of his habeas petition, Roberts alleges that "there was no factual basis for the guilty plea." Dkt. 1 at 6. The OCCA held: "we find the record before us reflects a sufficient factual basis for the pleas so that the trial court could be assured the pleas were entered voluntarily and that it was not sending an innocent man to prison." Dkt. 7-8 at 5.

Under applicable law, a federal court's ability to evaluate the factual basis for a guilty plea on habeas review is quite limited. Unless a defendant makes an *Alford* plea—one in which he pleads guilty yet maintains his factual innocence—*see North Carolina v. Alford*, 400 U.S. 25, 31-32 (1970), a federal court sitting in habeas does not inquire into the factual basis for a plea. *See Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971) (holding that federal rule requiring factual basis for acceptance of guilty plea is not binding on state courts). There exists no constitutional mandate for review of the factual basis for a plea; it is a matter of state law not cognizable in a habeas petition. *See Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979); *Bond v. State of Oklahoma*, 546 F.2d 1369, 1377 (10th Cir. 1976). *See generally, Estelle v. McGuire*, 502 U.S. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Roberts did not enter an *Alford* plea. He admitted in the plea documents and in the colloquy with the trial judge that he understood and agreed that the acts alleged in the information did occur. Dkt. 7-9 at 10. The OCCA affirmed the trial court's finding of a factual basis for Roberts' plea. There is no further inquiry in the habeas context. Because Roberts' challenge to the lack of a

13

factual basis for his guilty plea fails to present an issue where the Supreme Court has found a constitutional violation, he has failed to raise an issue upon which the Court may grant federal habeas relief. Accordingly, Ground II of the petition for writ of habeas corpus is DENIED.

### III. The OCCA's determination that Roberts received effective assistance of counsel in his two motions to withdraw the plea is neither contrary to or an unreasonable application of relevant federal law.

Roberts argues that his attorney advised him to enter a guilty plea that was not knowing and voluntary and acted ineffectively by failing to raise relevant issues in the motion to withdraw the guilty plea.

The OCCA determined:

> Petitioner was entitled to the effective assistance of counsel at both the plea hearing and on the motion to withdraw. *See Braun v. State*, 1995 OK CR 42, ¶ 18, 909 P2d 783, 790 (plea counsel); *Carey v. State*, 1995 OK CR 55, ¶ 5, 902 P.2d 1116, 1117 (withdrawal counsel). In order to obtain relief based on ineffective assistance of counsel in a guilty plea situation, a "petitioner must show first counsel's representation fell below an objective standard of reasonableness." *Braun*, 1995 OK CR 42, ¶ 18, 909 P.2d at 790. Additionally, a petitioner must show prejudice, which in the context of a guilty plea focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* Phrased another way, a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id. See also Medlock v. State*, 1994 OK CR 65, ¶ 37, 887 P.2d 1333, 1345.
>
> We find plea counsel's advice that Petitioner was subject to the maximum punishment in each count if he went to trial cannot be equated with the force and coercion required to make the plea involuntary. The record shows that Petitioner was fully informed that in exchange for his guilty pleas to Counts II and IV, Counts I and III would be dismissed and that sentencing in Counts II and IV would be by the trial court within the applicable statutory ranges. That counsel could not say for certain what punishment a jury would recommend is not grounds for finding counsel ineffective. *See Estell*, 1988 OK CR 287 ¶ 5, 766 P.2d at 1382-1383. Petitioner has not shown how counsel's conduct was deficient.
>
> Further, Petitioner fails to show how counsel's conduct was deficient regarding any miscommunication between court and counsel on the time frame for moving to withdraw the pleas. A timely motion to withdraw was filed by both plea counsel and subsequently by conflict-free counsel. Both motions were heard by the trial

> court. Petitioner has failed to show that but for any error by counsel in this regard, that he would not have pleaded guilty but instead gone to trial.
>
> Further, we find conflict free counsel appearing at the withdrawal hearing fully represented Petitioner in seeking to withdraw the plea. The focus of the motion to withdraw was that plea counsel's ineffectiveness rendered the pleas not voluntary. However, as the record shows[,] knowing and voluntary pleas were entered. Petitioner has therefore failed to show counsel's performance was deficient or that he was prejudiced by counsel's failure to raise additional reasons for withdrawal. Petitioner's claim of ineffective assistance of counsel is denied.

Dkt. No. 7-8 at 5-7.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for analyzing claims of ineffective assistance of counsel on habeas review. First, the defendant must demonstrate his attorney's performance was deficient. Second, the defendant must demonstrate the alleged deficient performance prejudiced his defense. *Id.* at 687. In the context of habeas challenges to a guilty plea, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Fields v. Gibson*, 277 F.3d 1203, 1215 (10th Cir. 2002) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). A petitioner must also demonstrate that "counsel's unconstitutionally ineffective performance affected the outcome of the plea process." *United States v. Carr*, 80 F.3d 413, 417-18 (10th Cir. 1996) (citing *Hill*, 474 U.S. at 59). Stated another way, a habeas petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Fields*, 277 F.3d at 1215 (quoting *Hill*, 474 U.S. at 59). The Tenth Circuit Court of Appeals has held that a defense attorney's faulty prediction of a judge's sentence after a guilty plea does not constitute ineffective assistance of counsel. *See Fields*, 277 F.3d at 1216.

Encompassed in the Sixth Amendment right to counsel "is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)); *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)).

The mere "possibility of conflict of interest is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. A criminal defendant must show an "actual conflict of interest . . . that affected counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

Both the trial court and the OCCA found Attorney Blackburn (Roberts' first defense counsel) to have provided effective assistance of counsel. On the first appeal of the denial of the motion to withdraw the plea, the OCCA found, however, that Attorney Blackburn had conflicts of interest that were significant enough to remand the case for rehearing of the motion with new counsel. The trial court appointed new counsel and reheard a subsequent motion to withdraw the plea brought by newly appointed, conflict-free counsel. In finding Attorney Blackburn effective despite her conflicts of interest, the trial court focused on her success in negotiations with the prosecution which resulted in the dismissal of two of the four felony counts against Roberts. This certainly benefitted Roberts. The OCCA affirmed the trial court's findings.

The Court acknowledges that the OCCA found Roberts' first defense counsel did have an actual conflict of interest. The OCCA reversed the denial of the motion to withdraw, ordered appointment of new, conflict-free counsel, and remanded the case to the trial court for a hearing on a second motion to withdraw the plea. Although new counsel was appointed, both the trial court and the OCCA on subsequent appeal, considered the actions of initial counsel in determining that Roberts received the process he was constitutionally due.

As the OCCA resolved the conflict-of-interest issue on the first appeal of the denial of the motion to withdraw, and Roberts was afforded a new, conflict-free attorney and a new hearing on the motion to withdraw, this court will not review (and Roberts did not raise in his petition) the conflict-of-interest issue. This leaves open only the questions whether Roberts' attorneys

performances were deficient and whether Roberts was prejudiced thereby under the standards set forth in *Strickland*.

This Court's extensive review of the record reveals that Roberts has demonstrated no prejudice to his defense resulting from conduct of either of his attorneys. At the second hearing on the motion to withdraw the plea, Roberts testified that his dissatisfaction with Attorney Blackburn centered around the either/or scenario Blackburn described to Roberts. Roberts averred that Blackburn told him if he went to trial, he was likely to be found guilty on all the charges and receive the maximum sentence—imprisonment for life—for each. Roberts stated that the only other option presented to him was to enter into the blind plea she had negotiated with the prosecution, which included the dismissal of two of the felony charges, but left sentencing up to the trial judge who could sentence him anywhere within the statutory range. Roberts also stated that Blackburn did not give him a third option and further, did not give him enough time to consider and weigh his options. Roberts also claimed that he was not given enough information about the workings of the plea process. Both the trial court and the OCCA found that his attorney did provide him with the required information, and Roberts understood it when asked at the hearing. Moreover, Roberts did not provide an alibi or any other defense he might have used if the court allowed him to withdraw his plea. As a result, the trial court found no basis for withdrawing the plea. The OCCA affirmed.

Roberts cannot make a Sixth Amendment claim of ineffective assistance of counsel without a showing of prejudice against the defense. Although Roberts appears to regret waiving his right to a trial, he has not pointed to any acts of counsel that "fell below an objective standard of reasonableness," nor has he shown that he was prejudice by attorney misconduct.

This Court finds that the OCCA's holding was neither contrary to nor an unreasonable application of federal law. Roberts has made no showing on either *Strickland* prong. Although he regrets pleading guilty and sought to withdraw his plea and be afforded a trial, he has not shown any act by either of his attorneys that "fell below an objective standard of reasonableness," nor has he demonstrated how he was prejudiced by any action of his attorneys. Accordingly, Ground III of Roberts' habeas petition is DENIED.

## CONCLUSION

In summary, Petitioner has not shown that he is in custody in violation of the Constitution. The Court therefore denies Roberts' Petition for Writ of Habeas Corpus [Dkt. No. 1]. Further, because Roberts has not shown that reasonable jurists would debate this Court's assessment of his constitutional claims, the Court DENIES a certificate of appealability.

**IT IS THEREFORE ORDERED** that:

1. The Petition for Writ of Habeas Corpus [Dkt. No. 1] is DENIED;

2. A certificate of appealability is DENIED; and

3. A separate judgment shall be entered in this matter.

Dated this 12th day of September 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE